**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 11-1856

DARREN F. STARR,

Plaintiff, Appellant,

v.

CORPORAL KNIERMAN, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

Darren Starr on brief pro se.

April 10, 2012

**Per Curiam**.  Darren Starr, a New Hampshire state prison inmate, appeals a district court judgment dismissing his complaint, which raised procedural due process claims relative to the rejection of certain incoming personal mail, for failure to state a plausible claim for relief.  See 28 U.S.C. § 1915A(a)-(b) (providing for screening and dismissal of prisoner civil complaints against government defendants if no claim for relief is stated); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (complaint must state a plausible claim).

We review de novo, treating the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in Starr's favor.  Toolin v. White, 89 Fed. Appx. 746, *746 (1st Cir. 2004) (unpublished per curiam) (§ 1915A dismissal) (citations omitted).  We affirm for the following reasons.

I.  Background

Starr's complaint and attached documents show that mail addressed to him was rejected and returned to its senders pursuant to prison policy.  Under that policy, Starr received notice when one of his three pieces of mail was opened and rejected because it contained an unauthorized item, but no opportunity to appeal the rejection decision before the mail was returned to the sender.  He received no notice or opportunity to appeal relative to the other two pieces of mail, which were rejected before being opened because formal deficiencies revealed on the face of the envelopes rendered

-2-

the mail unacceptable for further processing.  Starr asserts that the prison's policy of not giving him notice of and/or an opportunity to appeal the rejection of his mail before it was returned to the sender violated his Fourteenth Amendment procedural due process rights.

Starr argues on appeal that his due process claims are plausible.  In effect, he treats as dispositive the "minimum" procedural protections described in Procunier v. Martinez, 416 U.S. 396 (1974) overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  In that case, which involved the censorship of inmate personal correspondence, the Court agreed that (1) notice should be given to inmates if personal letters they write or are intended to receive are rejected; (2) the person writing the letter should be given a "reasonable opportunity to protest" the rejection, and (3) complaints should be heard by a person not involved in the decision to reject the letter.  See id. at 418-19.

II.  Discussion

Martinez involved a state regulation that censored--effectively barred the receipt or delivery of--inmate letters based solely on their content, without providing either the sender or inmate any procedural protections.  In addition, the prison used censorship criteria that were ambiguous and inherently subjective, e.g.,  whether  the  letter  in  question  contained  politically

-3-

"inflammatory" opinion. The policy at issue here is much different. First, it bases the rejection of mail on simple and clearcut criteria. See, e.g., PPD 5.26, Att. A (listing the criteria such as whether mail has "stickers" on it or contains "unused personal correspondence materials"). Second, as indicated below, it gives specific procedural safeguards to either the sender or the inmate or to both of them when mail is rejected. We therefore evaluate Starr's claims not by rote reference to the Martinez protections, but by balancing the factors in Mathews v. Eldridge, 424 U.S. 319, 335 (1976). See Wilkinson v. Austin, 545 U.S. 209, 224 (2005) (the Court has not established "rigid rules," but instead balances the Mathews factors in evaluating "the sufficiency of particular procedures").

Under the prison's policy and regulations, senders receive written notice explaining why their mail to inmates has been rejected, which allows them to cure any prior deficiencies on their part, and they may obtain independent review of the rejection decision, which allows them to object to any errors by the mailroom. See PPD 5.26.IV.L.1 (notice to originator of mail); N.H. Code Admin. R. Cor 301.05(m)(2) (same); PPD 5.26.IV.L.3 (notice must explain rejection); N.H. Code Admin.R. Cor 301.05(m)(3) (originator has right to protest to the facility's "chief administrator" and to appeal to the DOC Commissioner). Starr, who could not have cured any deficiencies on the sender's part and who

had no first-hand knowledge whether the mailroom had erred in rejecting the mail, has not alleged that senders are not in fact accorded these rights. In addition, under prison policy, Starr may and did pursue grievances to his warden and the DOC commissioner, in which he raised his own objections to the rejection of his mail once he learned that his mail had been rejected. See PPD 1.16.

Starr's allegations do not show that these currently existing procedures fail to adequately protect his Fourteenth Amendment liberty interest in receiving mail, or that the additional essentially duplicative notice and appeal procedures he seeks would improve the prison's decisionmaking process, such that imposing costs on the state to provide such procedures would be warranted. See Mathews, 424 U.S. at 335 (courts must consider the private interest, the need for additional procedures to protect such interest, and the governmental interest). For this reason, we agree with the district court that Starr's claims fail to state a plausible claim for which relief could be granted.

We affirm the judgment dismissing the complaint.